UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARIO JAVIER CEDENO-GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00473-JPH-MJD |
| | ) | |
| KRISTI NOEM, | ) | |
| TODD M. LYONS, | ) | |
| BRISON SWEARINGEN, | ) | |
| PAM BONDI, | ) | |
| SAMUEL OLSON, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER TO SHOW CAUSE AND OTHERWISE DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

Mario Cedeno-Gonzalez is an alien with an aggravated felony conviction and is subject to a final order of removal. He is currently detained by U.S. Immigration and Customs Enforcement ("ICE") in the Clay County, Indiana, Jail. Mr. Cedeno-Gonzalez filed a petition for a writ of habeas corpus and for preliminary injunctive relief, dkts. 1, 2.  Later, he filed an amended emergency petition for a writ of habeas corpus and preliminary injunctive and declaratory relief, dkt. 24, which is the operative petition. Mr. Cedeno-Gonzalez has also filed a motion to expedite, dkt. 31. For the following reasons, Respondents have **until 5:00 p.m. on October 29, 2025, to show cause why the Petition should not be granted** for failure to afford Petitioner an informal interview with the opportunity to respond to the reasons for revocation and submit evidence or information in support of his release. The amended petition and motion for preliminary injunctive relief, dkt. [24], are **otherwise DENIED**.

# I.
# Background

## A. Mr. Cedeno-Gonzalez's entry to the U.S. and order of removal

On February 12, 2013, Mr. Cedeno-Gonzalez entered the United States on a B-2 tourist visa. Dkt. 24 at 10; dkt. 16-2 at 2. Within one year, he applied for asylum and obtained a six-month extension of his tourist visa. Dkt. 24 at 10.

In September 2016, Mr. Cedeno-Gonzalez was charged with and pled guilty to mail fraud in the United States District Court for the Southern District of Florida and was sentenced to 27 months' imprisonment. *Id.*; dkt. 20 at 1.

On May 18, 2018, the government initiated removal proceedings. Dkt. 24 at 10; dkt. 16-2 at 1.

On December 3, 2018, after a hearing, the Immigration Judge denied Mr. Cedeno-Gonzalez's application for asylum and ordered him removed to Venezuela.  Dkt. 16-2 at 23.  In that same order, however, the Immigration Judge ordered deferral of removal pursuant to the Convention Against Torture ("CAT").  Dkt. 16-2 at 21–22; dkt. 24 at 10.

On December 20, 2018, Mr. Cedeno-Gonzalez was released from custody pursuant to an order of supervision.  Dkt. 24 at 10; dkt. 16 at 2.

## B. Mr. Cedeno-Gonzalez's recent arrest and detention

On August 29, 2025, an ICE immigration officer issued a warrant to detain Mr. Cedeno-Gonzalez pursuant to the 2018 removal order, and he was taken into custody. Dkt. 16-1 at 1–2, 5; dkt. 20 at 2.

ICE provided Mr. Cedeno-Gonzalez with a "Notice of Revocation," citing Immigration and Nationality Act ("INA") regulations as the basis for revocation of his order of supervision and resulting detention. Dkt. 2-1 at 2 (citing 8 C.F.R. §§ 241.4, 241.13).

The Notice of Revocation informed Mr. Cedeno-Gonzalez:

- The decision to revoke his order of supervision was based on "a review of your official alien file and a determination that there are changed circumstances in in your case."

- "ICE has determined you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you" and that his case is "under current review by a third country for the issuance of a travel document."

- He will be "afforded an informal interview at which you will be given an opportunity to respond to the reasons for revocation. You may submit any evidence or information you wish to be reviewed in support of your release." *Id.*

On September 23, 2025, ICE notified Mr. Cedeno-Gonzalez that it intends to remove him to Mexico. Dkt. 16-3. Shortly thereafter, Mr. Cedeno-Gonzalez's attorney notified ICE that Mr. Cedeno-Gonzalez was afraid to be removed to Mexico. Dkt. 20-1 at 3 ¶ 13. A Department of Homeland Security ("DHS") asylum officer then interviewed Mr. Cedeno-Gonzalez on October 9, 2025, in response to his concern that, if removed to Mexico, he would likely be abused and tortured because he is a Venezuelan migrant. Dkt. 21 at 5; dkt. 28

at 1; dkt. 28-2. The DHS asylum officer determined that Mr. Cedeno-Gonzalez "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." Dkt. 28-2.

Mr. Cedeno-Gonzalez filed a petition for writ of habeas corpus and an emergency motion for temporary restraining order to stay imminent removal. Dkts. 1, 2. Respondents filed a return to the Court's order to show cause and response in opposition to the motion for a temporary restraining order. Dkts. 8, 16. The Court ordered supplemental briefing, dkt. 18, and the parties complied, dkt. 20 (Respondent's supplemental response); dkt. 21 (Response to Respondents' answer and supplemental response). Mr. Cedeno-Gonzalez filed an amended complaint and emergency writ of habeas corpus. Dkt. 24. The Court ordered additional briefing on the amended complaint and emergency writ of habeas corpus, dkt. 25, and the parties complied, dkt. 27 (Petitioner's statement of materials differences in amended habeas petition); dkt. 28 (Respondents' supplemental filing). Mr. Cedeno-Gonzalez recently filed a motion to expedite. Dkt. 31.

## II.
## Applicable Law

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Applicable here, "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

# III.
# Analysis

## A. Detention

Mr. Cedeno-Gonzalez argues that his continued detention is unlawful. Dkt. 21; dkt. 24. Specifically, he argues that the government arbitrarily revoked his order of release.  Relatedly, he argues that the government must show that he is a risk of flight or a danger to the community to justify revocation of his order of supervision.  Last, he argues that his continued detention violates due process because it is "limitless in duration" and because the government didn't provide him with an opportunity to be heard before revoking his order of supervision.

### 1. Revocation of order of supervision

Mr. Cedeno-Gonzalez argues that ICE unlawfully revoked his order of supervision arbitrarily without first showing that there was a "material change in circumstances" or that he is a danger to the community or a flight risk.  Dkt. 21 at 2.  Respondents argue that Mr. Cedeno-Gonzalez's detention falls squarely within the discretion afforded to the Attorney General by 8 U.S.C. § 1231 and the corresponding regulations. Dkt. 20 at 4–7.

The INA provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day "removal period" begins at the latest of several enumerated events, and the only one applicable here is the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Mr. Cedeno-Gonzalez's order of removal became administratively final on

January 2, 2019,[1] so that's when the 90-day "removal period" began, 8 U.S.C. § 1231(a)(1)(B)(i). If an alien is not removed within the removal period, they are to be released on supervision, subject to the conditions set out in § 1231(a)(3). However, an alien "may be detained beyond the removal period" in statutorily enumerated circumstances, including conviction for an aggravated felony after admission. 8 U.S.C. § 1231(a)(6) (citing 8 U.S.C. § 1227(a)(2)).  The text of § 1231(a)(6) places no durational limits on the Attorney General's discretionary authority to detain aliens with final removal orders.

8 C.F.R. § 241.4 sets forth regulations regarding the custody and detention of aliens beyond the initial 90-day removal period. In relevant part, § 241.4 requires DHS to conduct an initial review as to whether an alien should be released on supervision or "continue [to be held] in custody beyond the removal period." *See* § 241.4(a), (h)(1), (h)(2), (k)(2). If an alien demonstrates that they are not "a danger to the community . . . or a significant risk of flight," DHS may release them. 8 C.F.R. § 241.4(d)(1).

8 C.F.R. § 241.13 also sets forth regulations regarding the custody and detention of aliens beyond the initial 90-day removal period. It provides that any "eligible alien may submit a written request for release" asserting "that there is no significant likelihood that the alien will be removed in the

---

[1] Respondents say the order of removal became administratively final on November 21, 2018. Dkt. 20 at 2. But that was when the immigration hearing occurred. Dkt. 24 at 3. An order of removal becomes administratively final 30 days after either an oral or written decision. 8 C.F.R. § 1003.38(b). There's no indication of an oral decision here, so the order became administratively final 30 days after the December 3, 2018, written decision, i.e., January 2, 2019.

reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). Upon consideration of various factors, DHS then issues a written decision. § 241.13(g). If it determines "that there is no significant likelihood of removal in the reasonably foreseeable future," it must release the alien, barring "special circumstances." 8 C.F.R. § 241.13(g)(1). *See* 8 C.F.R. § 241.13(b)(1) (discussing the relationship to 8 C.F.R. § 241.4).

Here, the record does not contain documents related to Mr. Cedeno-Gonzalez's initial release, but does show that ICE provided Mr. Cedeno-Gonzalez with a notice informing him that his order of supervision had been revoked due to "changed circumstances," specifically, that "ICE has determined you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you" and that his case is "under current review by a third country for the issuance of a travel document."  Dkt. 2-1 at 2 (Notice of Revocation of Release).  The Notice of Removal states that ICE intends to remove him to Mexico, dkt. 16-3, and other designated evidence indicates that the United States "currently has a valid agreement with Mexico to accept third country removals," dkt. 20-1 at 3 ¶ 13.  So, the record demonstrates that Mr. Cedeno-Gonzalez's arrest and detention were not "arbitrary" and unsupported by any reason, dkt. 21 at 2.

Next, Mr. Cedeno-Gonzalez argues that because he was previously released from custody, he may only be re-detained "based on a finding that he was 'a risk to the community or unlikely to comply with the order of removal'" under 8 U.S.C. § 1231(a)(6). Dkt. 24 at 13; dkt. 21 at 2 ("DHS's re-detention of

Mr. Cedeno is in direct violation of 8 U.S.C. § 1231(a)(6) for failing to show any danger to the community or non-compliance.").  But Mr. Cedeno-Gonzalez misapplies the language of § 1231(a)(6), which permits post-removal period detention of certain groups of aliens ordered removed due to inadmissibility; removability for, among other things, certain criminal offenses; *or* who have been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."  Here, it's undisputed that Mr. Cedeno-Gonzalez was ordered removed based on an aggravated felony, *see* 8 U.S.C. 1227(a)(2)(A)(iii), so § 1231(a)(6) authorizes his detention regardless of whether he presents a danger to the community or is unlikely to comply with a removal order.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (explicitly listing § 1231(a)(6)'s bases for detention in the disjunctive).

Mr. Cedeno-Gonzalez further argues that the regulations cited in the Notice of Revocation of Release, 8 C.F.R. §§ 241.4, 241.13, do not apply to him because he was not released pursuant to those regulations. Dkt. 2-1 at 2; dkt. 24 at 13–14.  The regulations apply, however, to the "[c]ontinued detention of . . . criminal . . . aliens beyond the removal period," including "[a]n alien ordered removed who is removable under section[] 237(a)(2) [8 U.S.C. § 1227(a)(2)]." § 241.4(a)(3).  And as explained above, Mr. Cedeno-Gonzalez was ordered removed under § 1227(a)(2) and is detained beyond the removal period. Moreover, regulations applicable to deferred removal under the Convention Against Torture provide that "decisions about the alien's release shall be made according to part 241 of this chapter." 8 C.F.R. § 1208.17(c).

Mr. Cedeno-Gonzalez argues in the alternative that those regulations do not support his detention because "§ 241.4 requires an individualized finding of danger or not compliance."  Dkt. 21 at 3. More specifically, Mr. Cedeno-Gonzalez contends that DHS must show by "clear and convincing evidence" that he is either a flight risk or poses a danger to the community." *Id.* Respondents state, however, that Mr. Cedeno-Gonzalez's revocation was based on § 241.13. dkt. 28 at 1, which, as explained above, does not base revocation on flight risk or danger to the community.

When an alien is released from custody on supervision, that release may be revoked under § 241.4(l) or § 241.13(i).  § 241.4(l)(2) grants authority, in relevant part, to revoke release of an alien released under § 241.4 if an appropriate official determines: "(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien." § 241.13(i)(2) grants authority to revoke release of an alien based on "changed circumstances" upon which there is now "a significant likelihood that the alien may be removed in the reasonably foreseeable future."  The regulations further provide that, upon revocation, the alien be provided an "initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation."  8 C.F.R. § 241.13(i)(3).

Here, as explained above, ICE provided notice that it determined there were "changed circumstances" in Mr. Cedeno-Gonzalez's case, i.e., "ICE has determined [he] can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]" and that his case is "under

current review by a third country for the issuance of a travel document." Dkt. 2-1 at 2. These reasons for revocation squarely align with 8 C.F.R. § 241.13(i)(2) (and also appear to satisfy 8 C.F.R. § 241.4(l)(2)(iii)). Mr. Cedeno-Gonzalez suggests that the notice was "generic," that there are no "changed circumstances," and that ICE just made that up to meet a daily quota of arrests of deportable aliens. Dkt. 24 at 11 ¶¶ 44-45, 18 ¶ 71. But he provides no facts showing that ICE's stated reasons for revoking his order of supervision are untrue or were fabricated. However, it is unclear from the record whether Respondents have afforded Mr. Cedeno-Gonzalez an informal interview with the opportunity to respond to the reasons for revocation and submit evidence that there is no significant likelihood he will be removed in the foreseeable future. *See* 8 C.F.R. § 241.13(i)(3).

In sum, 8 U.S.C. § 1231(a)(6) and 8 C.F.R. §§ 241.4, 241.13 allow for revocation of Mr. Cedeno-Gonzalez's supervision and his continued detention pending removal. But Respondents are **ordered to show cause** why the Petition should not be granted for failure to afford Mr. Cedeno-Gonzalez the informal interview.

### 2. Due process

Mr. Cedeno-Gonzalez argues that his continued detention violates due process. Specifically, he argues that the six-month period of presumptively reasonable detention created by the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678 (2001) is not a "bright line" and doesn't apply here. Dkt. 24 at 18. He further argues that even if there is an applicable presumptively reasonable six-

month period of detention, it lapsed years ago and therefore doesn't support his continued detention. Dkt. 27 at 3. Last, he argues that his detention is constitutional only if it is reasonably related to the government's interest in assuring his presence at immigration proceedings and preventing him from committing crimes while awaiting removal. Dkt. 24 at 13. Respondents argue that Mr. Cedeno-Gonzalez's detention falls squarely within the discretion afforded to the Attorney General by 8 U.S.C. § 1231 and does not violate the Due Process Clause. Dkt. 20 at 4–7.

In *Zadvydas v. Davis,* 533 U.S. 678, 697 (2001), the Supreme Court recognized that Congress granted the Attorney General authority to detain aliens under § 1231 for the express purpose of facilitating their removal. The Court limited that authority by determining that § 1231(a)(6) did not give the Attorney General discretion to detain aliens indefinitely—that would violate the Fifth Amendment's Due Process Clause. *Id.* at 696. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01.

Here, Mr. Cedeno-Gonzalez's order of removal became administratively final on January 2, 2019, so that's when the 90-day "removal period" began, 8 U.S.C. § 1231(a)(1)(B)(i). And Mr. Cedeno-Gonzalez was convicted of an aggravated felony, so the statute permits his detention beyond the 90-day "removal period." *See* dkt. 16 at 8; 8 U.S.C. § 1231(a)(6). Mr. Cedeno-Gonzalez has been detained since August 29, 2025, approximately two months. He

argues that the "six-month presumption is not a bright line and that *Zadvydas* does not automatically authorize all detention until it reaches constitutional limits." Dkt. 21 at 2–3. But in *Zadvydas,* the Court connected the six-month presumptively reasonable period of detention to the judiciary's obligation to show deference to the executive branch, believing it was "practically necessary to recognize some presumptively reasonable period of detention" "to guide lower court determinations." *Id.* at 701; 700 ("Ordinary principles of judicial review . . . counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise."). The Court therefore concludes that the six-month presumptively reasonable period of detention applies here and Mr. Cedeno-Gonzalez's two months in detention is well within that period.

Mr. Cedeno-Gonzalez next argues that his detention nonetheless violates due process because it exceeds the six-month period of presumptively reasonable detention. He argues that his six-month period began to run when his removal order became final in 2019. Dkt. 21 at 4. Therefore, the six-month "presumptively reasonable period of detention" expired years ago, making his continued detention unlawful unless the government can show a significant likelihood that he will be removed in the reasonably foreseeable future. *Id.*; dkt. 24 at 5; *Zadvydas*, 533 U.S. at 701.

Citing *Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007) (*Hussain I*) and *Hussain v. Mukasey*, 518 F.3d 534 (7th Cir. 2008) (*Hussain II*), Mr. Cedeno-Gonzalez argues that ICE cannot "choose to begin or reset the presumptively reasonable period of confinement at any 'time.'" Dkt. 24 at 23. The

Respondents counter that the facts here are meaningfully different from the facts in the *Hussain* cases, so those cases don't control. Dkt. 20 at 4–7. The Seventh Circuit considered *Zadvydas*'s six-month period of presumptive reasonableness in the *Hussain* cases. Hussain's removal proceedings began after he completed a criminal sentence. *Hussain I*, 510 F.3d at 740. He was detained during the pendency of the removal proceedings. *Id.* at 740–41. He filed a habeas petition seeking release from custody while the removal proceeding was pending, which was denied. *Id.* at 741.

Hussain was ordered removed, but the Immigration Judge ordered his removal stayed until and unless he could be removed consistent with the Convention Against Torture. *Id.* The Seventh Circuit further stayed removal pending its review of the removal order. *Id.* And, while that review was pending, it considered his appeal of the denial of the habeas petition. *Id.* at 742. The Seventh Circuit affirmed the denial of the habeas petition in *Hussain I* and then denied the petition for review of the removal order in *Hussain II*.

*Hussain I* interpreted *Zadvydas*'s six-month period of presumptively reasonable detention as beginning at the same time as the 90-day removal period:

> To avoid a due process issue, the Supreme Court held in *Zadvydas* [. . .] that section 1231(a)(6) should be interpreted to create a presumption that if six months *after the beginning of the removal period* the alien has not been removed, he is entitled to be released if "there is no significant likelihood of removal in the reasonably foreseeable future." Hussain's removal period will not begin until and unless we affirm the removal order.

*Hussain I*, 510 F.3d at 742 (citations omitted) (emphasis added). Because the Court of Appeals stayed the removal order, Hussain's removal period had not begun. *Id.* at 743; 8 U.S.C. § 1231(a)(1)(B)(ii). Therefore, when the Court of Appeals issued its ruling on the removal order, it clarified that the clock began to tick on both the removal period and six-month period of presumptively reasonable detention. *Hussain II*, 518 F.3d at 539.

In *Hussain I,* the Seventh Circuit stated that *Zadvydas* "should be interpreted to create" a period of presumptive reasonableness ending "six months after the beginning of the removal period." 510 F.3d at 742. But there, Mr. Hussain had been continually detained for years pending his removal. *Id.* at 740. Here, Mr. Cedeno-Gonzalez has been detained for less than two months. Dkt. 24 at 11. These meaningful differences bring Mr. Cedeno-Gonzalez's case outside the scope of *Hussain*.

Mr. Cedeno-Gonzalez also cites *Asghar v. Swearingen*, 2:25-cv-00306-JRS-MJD, dkt. 18 (S.D. Ind. Aug. 22, 2025). *See* dkt. 24 at 23–24. There, the Court applied the *Hussain* cases to find that Asghar's six-month period of presumptively reasonable detention began at the same time as the 90-day removal period. *Id.* at 8. Since Asghar's removal period began and expired years before his detention began, the Court found that he was entitled to release unless respondents could demonstrate that his removal was imminent. *Id.* at 9, 11. *Asghar* presented very different facts—Mr. Asghar was granted deferred action after the government found his U visa application bona fide, and he did not have a conviction for an aggravated felony. 2:25-cv-00306-JRS-MJD, dkt.

18, at 2–3. Moreover, other courts facing similar facts have rejected the argument Mr. Cedeno-Gonzalez makes here, concluding that the six-month period begins to run with an alien's detention. *See, e.g., Guerra-Castro v. Parra,* No. 1:25-cv-224487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) ("Petitioner has been in detention since May 29, 2025; therefore, his two-month detention is lawful under *Zadvydas.*").

Also, the Court cannot reconcile the plain language of *Zadvydas* with the proposition that Mr. Cedeno-Gonzalez's six-month period of presumptively reasonable detention began and expired before his current detention started. In *Zadvydas,* the Supreme Court stated that it created the six-month period of presumptive of reasonableness in part because it found that "Congress previously doubted the constitutionality of *detention* for more than six months." *Zadvydas*, 533 U.S. at 701 (emphasis added). Congress did not, in the Supreme Court's view, necessarily doubt the constitutionality of detention *starting* more than six months after commencement of the removal period. The Court, by its own terms, created the presumption to prevent indefinite detention—not to limit detention to a certain window after the final removal order.

So here, the Court finds that the clock on the six-month period of presumptively reasonable detention applicable to Mr. Cedeno-Gonzalez began to run when he was taken into custody on August 29, 2025. Because he has been detained for approximately two months and ICE has represented that he is being detained in furtherance of his removal from the United States, his

continued confinement is presumptively reasonable under the Fifth Amendment.

Mr. Cedeno-Gonzalez also argues that his detention isn't reasonably necessary to facilitate his removal. *See* dkt. 24 at 12–13. But *Zadvydas* states: "an alien may be held in confinement *until it has been determined* that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. As discussed above, detention for six months in this context is presumptively reasonable, so the burden is on Mr. Cedeno-Gonzalez to show that his current detention is not reasonable. He has not designated evidence showing that his removal is unlikely to occur in the reasonably foreseeable future, so he has not carried his burden.

Relatedly, Mr. Cedeno-Gonzalez argues that, even within the six-month period, detention is constitutional only if it is reasonably related to the government's interest in assuring the removable alien's presence at immigration proceedings and preventing the alien from committing crimes while awaiting removal. Dkt. 24 at 13. In other words, because the government determined when it placed him on an order of supervision that he was unlikely to flee or commit crimes, his current detention cannot be reasonably related to a legitimate purpose. This argument essentially asks the Court to find that Mr. Cedeno-Gonzalez must be released because he hasn't been shown to be a flight risk or danger to the community. His citation to *Zadvydas* in support of this argument, however, does not hold water. A key premise in that case was that detention is lawful to facilitate removal: "an alien *may be held in confinement*

*until* it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701 (emphasis added); *cf.* 8 U.S.C. § 1231(a)(1)(C) (requiring the Attorney General to hold aliens in detention during the removal period). At this juncture, Mr. Cedeno-Gonzalez's detention is a presumptively reasonable part of the removal process, and Mr. Cedeno-Gonzalez has not put forth evidence to overcome this presumption. *See Zadvydas*, 533 U.S. at 700–01 (noting that a period of presumptively reasonable detention was necessary to "limit the occasions when courts will need to make [difficult judgments]" about Executive Branch activities).

### 3. Opportunity to be heard

Mr. Cedeno-Gonzalez next argues that after being out on release for nearly seven years, he was re-arrested and re-detained "without being provided a due process hearing to determine whether his detention is justified."  Dkt. 24 at 2.  This ignores, however, that in conjunction with revoking Mr. Cedeno-Gonzalez's order of supervision, ICE notified him, "You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for revocation. You may submit any evidence or information you wish to be reviewed in support of your release."  Dkt. 21-2 at 2. Mr. Cedeno-Gonzalez does not explain why that post-arrest interview doesn't satisfy due process. Moreover, it's clear from his filings that Mr. Cedeno-Gonzalez equates the right to be heard with being able to argue before an Immigration Judge and introduce evidence showing that he is not a flight risk or a danger to the community.  Dkt. 24 at 18, 22; dkt. 21 at 3 (Mr. Cedeno-

Gonzalez's brief, arguing that he is entitled to an "individualized finding or danger or non-compliance"; that DHS has not shown that he is a "flight risk or poses a danger to the community"; and that his "seven years of consistent reporting to ICE and complete compliance to the conditions of his OSUP run counter to any suggestion that he poses a flight risk or danger to others").

As discussed *supra*, however, the government didn't base its revocation of Mr. Cedeno-Gonzalez's order of supervision on risk of flight or danger to the community.  Instead, it cited "changed circumstances" in his case, namely, "ICE has determined [he] can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]" and that his case is "under current review by a third country for the issuance of a travel document." Dkt. 2-1 at 2. And as discussed above, detention during removal proceedings is a permissible part of that process and such detention is presumptively reasonable for a period of six-months. Mr. Cedeno-Gonzalez's ability to show that he doesn't pose a risk of flight or danger to the community would not impact ICE's decision to revoke his order of supervision and detain him pending removal.

Mr. Cedeno-Gonzalez further argues that he has a liberty interest in release from custody and is entitled to a hearing before he may be detained. Dkt. 24 at 17–19.  But again, he has not explained why the post-arrest informal interview referenced by ICE in the Notice of Revocation of Release does not satisfy due process under the circumstances presented here, i.e., detention

to effectuate removal of an alien ordered removed based on an aggravated felony.

Mr. Cedeno-Gonzalez's argument based on *Mathews v. Eldridge*, 424 U.S. 319 (1976), dkt. 24 at 17, similarly does not persuade the Court that due process required an opportunity to be heard before his order of supervision was revoked. *Mathews* established a three-part test for identifying "the specific dictates of due process" and determining "whether the administrative procedures provided . . . are constitutionally sufficient." 424 U.S. at 334–35. A plaintiff must set out "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335.

Here, there's no doubt that Mr. Cedeno-Gonzalez has "profound individual interests" at stake here; namely, his liberty. Dkt. 24 at 17 (citing *Zadvydas*, 522 U.S. at 690 ("[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.")).  As to the second element, Mr. Cedeno-Gonzalez argues that an alternative procedure—"[r]elease from custody until ICE assesses and demonstrates that Petitioner is a flight risk or danger to the community, or that his detention is not going to be indefinite"—is likely to

minimize the risk of erroneous deprivation of that liberty. *Id.* at 18–19. But as explained *supra*, the risk of flight and danger to the community are not considerations relevant ICE's revocation of his order of supervision. Therefore, Mr. Cedeno-Gonzalez's lack of opportunity to show before his order of supervision was revoked that he's not a flight risk or danger to the community did not impact the risk of erroneous deprivation of liberty.

Moreover, Petitioner does not explain why any such showing must be made at a pre-deprivation, rather than post-deprivation, opportunity to be heard. A post-deprivation "informal interview" is the due process provided by the regulations under these circumstances.  *See* 8 C.F.R. § 241.13(i)(3) (requiring informal interview "promptly after" an alien's return to ICE custody); 8 C.F.R. § 241.4(l) (same); *see also Cessay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162, 165 (W.D. N.Y. 2025) (finding procedural due process violation when government failed to provide alien an informal interview "promptly after being detained" as required under 8 C.F.R. § 241.4(l)(1)).  Mr. Cedeno-Gonzalez does not purport to challenge these regulations, does not explain how they produce less "accurate determinations" as to the propriety of revocation, and does not otherwise explain why the Court must intervene into the established post-deprivation interview procedure.[2]

---

[2] Petitioner argues these regulations do not apply to him. Dkt. 27 at 2. But regardless, he fails to explain why the level of procedural protection provided therein is not also adequate to protect his interests. There is no indication that the liberty interests protected by those regulations are any different—or any less forceful—than Petitioner's.

Finally, as to the third element, Petitioner argues that a pre-deprivation hearing (at which the government must demonstrate his risk of flight, danger, or changed circumstances) would be "far *less* costly and burdensome for the government than keeping him detained." Dkt. 24 at 18–19. But, again, risk of flight and danger to the community are not relevant considerations here. And as to the determination of "changed circumstances," the Court gives deference to DHS's decisionmaking. *See Zadvydas* 533 U.S. at 700 ("[O]rdinary principles of judicial review . . . counsel judges to give expert agencies decisionmaking leeway in matter that invoke their expertise. . . They recognize Executive Branch primacy in foreign policy matters.").

In sum, Mr. Cedeno-Gonzalez has not shown that he is entitled to a pre-deprivation hearing. The post-revocation interview process provided by the regulations appears to give Mr. Cedeno-Gonzalez a sufficient opportunity to be heard. As discussed above, however, the record does not reveal whether Respondents have afforded him that opportunity, so Respondents must show cause why the Petition should not be granted for failure to afford Mr. Cedeno-Gonzalez the initial interview.

**B. Procedural protections related to removal**

Mr. Cedeno-Gonzalez argues that he is being subjected to DHS's unlawful "policy of removing or seeking to remove individuals to third countries without first providing constitutionally adequate notice of third country removal, or any meaningful opportunity to contest that removal if the individual has a fear of persecution or torture in that country." Dkt. 24 at 6.

This argument ignores the fact that ICE informed him on September 23, 2025, that it intends to remove him to Mexico, dkt. 16-3, and that on October 9, 2025, a DHS asylum officer interviewed Mr. Cedeno-Gonzalez in response to his concern that if removed to Mexico, he would likely be abused and tortured because he is a Venezuelan migrant. Dkt. 21 at 5; dkt. 28 at 1; dkt. 28-2.

Moreover, Mr. Cedeno-Gonzalez does not refute the government's argument that to the extent he claims he is entitled to procedural protections before being removed to a third county, that relief exceeds the scope of relief available in a habeas proceeding because it challenges his removal rather than the legality of his detention.  Dkt. 16 at 9; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117–18 (2020) (finding an alien's claim for relief in the form of an order allowing an "opportunity to apply for asylum" to be outside the scope of relief a court may award in a habeas proceeding as habeas is a "means of contesting the lawfulness of restraint and securing release").

**IV.**
**Conclusion**

Mr. Cedeno-Gonzalez's motion to expedite, dkt. [31], is **granted** to the extent that the Court has issued this ruling.  Respondents have **until 5:00 p.m. on October 29, 2025, to show cause why the Petition should not be granted** for failure to afford Petitioner an informal interview with the opportunity to respond to the reasons for revocation and submit evidence or

information in support of his release. The amended petition and motion for

preliminary injunctive relief, dkt. [24], are **otherwise DENIED**.

**SO ORDERED.**

Date: 10/27/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana



Distribution:

All electronically registered counsel